# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 09 CR 186-1 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| CALVIN BOENDER, ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's "motion to bar testimony" [82]. For the reasons set forth below, the motion is respectfully denied.[1]

## I. Background

Petitioners are current and former City of Chicago Aldermen: they are William Banks, Ed Burke, Walter Burnett, Emma Mitts, Ricardo Munoz, Patrick J. O'Connor, Helen Shiller, Eugene Schulter, Ed Smith, and Bernard Stone (collectively "the Aldermen").[2] On January 29, 2010, the Aldermen filed a "motion to bar testimony" [82] in the upcoming criminal trial of Calvin Boender. Mr. Boender stands accused of, among other things, federal program bribery. The Superseding Indictment in the case [8] alleges that Boender was a real estate developer who bribed a city alderman, Isaac Carothers, as part of a scheme to have property rezoned. The alleged scheme involved having the Galewood Yards property "up zoned" from manufacturing use to residential and commercial use, which increased the value of the land.

---

[1] Nothing in this opinion should be read to address the relevance of the testimony in question. As discussed in greater detail below (see *infra* note 6), the proponent of testimony that is not barred by an evidentiary privilege still must demonstrate the relevance of the testimony before it will be admitted at trial. As stated on the record in open court during the final pre-trial conference on February 22, the Court has set this matter for an attorney proffer on the relevance of the testimony that Defendant proposes to elicit at trial from Petitioners.

[2] According to Petitioners, a subpoena that had been served on Alderman Manny Flores has been withdrawn. In addition, it appears that Alderman Emma Mitts is no longer a Petitioner, as she has agreed to waive any immunity that she may have.

The Aldermen's motion states that several of the Aldermen were on the Committee on Zoning. The Aldermen have been subpoenaed and believe that they will be called as witnesses and that Mr. Boender's attorneys intend to elicit testimony "as to why they voted in the manner they did on the legislation involving the Galewood Yards property." Petr.'s Mot. at 3. Based on that concern, the Aldermen ask the Court to bar inquiry into the question (and other legislative matters) at trial, should they be called to testify.

In response to the Aldermen's motion the Court invited briefing by the parties and allowed the Aldermen to respond. [See 97, 108]. After considering the materials that were submitted by the Aldermen and by the parties—the latter of whom were of one mind that the Aldermen misstate the pertinent law—the Court denies the Aldermen's motion.

## II. Legal Standard

The Federal Rules of Evidence provide, in pertinent part: "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501.

The Seventh Circuit teaches that several considerations are relevant in determining whether a federal common law privilege should be recognized pursuant to Federal Rule of Evidence 501. First, evidentiary privileges are not favored and, where recognized, should be construed narrowly. *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). "Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case" in order to "weigh

2

the need for truth against the importance of the * * * policy sought to be furthered by the privilege * * *." *Id.* (quoting *Ryan v. Comm'r of Internal Revenue*, 568 F.2d 531, 543 (7th Cir. 1977)). While Rule 501 teaches that federal common law drives the inquiry, principles of comity demand that state law should not be ignored, at least when there is "no substantial cost to federal substantive and procedural policy." *Id.* (quoting *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y. 1976)).

At the same time, evidentiary privileges should not be created lightly: the Supreme Court has stated that it is "disinclined" to treat the flexibility accorded by Rule 501 "expansively." *Univ. Pennsylvania v. E.E.O.C.*, 493 U.S. 182 (1990). The reason for the reticence is the "fundamental principle" in our legal system that "the public * * * has a right to every man's evidence." *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)). In the context of criminal cases, the question is whether the proposed privilege "promotes sufficiently important interests to outweigh the need for probative evidence in the administration of justice." *Id.*; see also *United States v. Nixon*, 418 U.S. 683, 710 (1974) ("exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth").

### III. Analysis

The Aldermen contend that there is a preexisting legislative immunity that applies in this case. That is incorrect: the numerous cases cited in their briefs relate to legislative immunity in civil cases or arise under the (inapplicable) Speech or Debate Clause of the United States Constitution. See, *e.g.*, *Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997) ("In *civil* cases, common law absolute legislative immunity offers protection similar to that available to federal legislators under the United States Constitution's Speech and [sic] Debate Clause")

3

(emphasis added). The baseline matters, because "the Supreme Court has instructed us, in developing a federal common law of privileges, to avoid either derogating existing privileges or extending privileges to new, uncharted waters absent compelling considerations." *In re Witness Before Special Grand Jury 2000-2*, 288 F.3d 289, 292 (7th Cir. 2002). Therefore, the question is whether the Court, based on the record before it, should recognize a legislative privilege in criminal cases in which a legislator is called as a witness. Although the Court acknowledges the importance of the comity concerns that are implicated by the Aldermen's motion, the Court reads the Supreme Court precedent as establishing "that where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." *United States v. Gillock*, 445 U.S. 360, 373 (1980). The Court also reads the cases as upholding that principle not only where the legislator appears as a defendant, but also where the legislator appears as a witness.

## A. *Gillock* and *Nixon*

Unlike federal legislators, the Aldermen cannot claim the protection of the U.S. Constitution's Speech or Debate Clause. The Speech or Debate Clause, which affords protections to federal legislators (*e.g.*, *Gravel v. United States*, 408 U.S. 606 (1972)), provides: "The Senators and Representatives * * * shall not be questioned in any other place" than "their respective Houses" for any "Speech or Debate." U.S. Const., Art. I, § 6, cl. 1. By its terms, the clause applies only to members of the United States Senate and House of Representatives and therefore does not apply to state or municipal legislators. See *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 404 (1979).

The key case for determining what, if any, privilege applies to the Aldermen is *United States v. Gillock*, 445 U.S. 360 (1980). Gillock was a Tennessee state senator whom a federal indictment charged with accepting money for, among other things, using his influence to try to

4

block the extradition of a criminal defendant from Tennessee to Illinois. Gillock filed a pre-trial motion to suppress all evidence related to his legislative activities. The district court granted the motion, relying on Rule 501 of the Federal Rules of Evidence. (Again, Rule 501 provides that absent specified contrary authority, recognizing privileges is a matter for federal common law in "light of reason and experience."). In essence, the district court reasoned that a privilege comparable to that afforded to federal legislators under the Speech or Debate Clause applied to state legislators. See *Gillock*, 445 U.S. at 362-63 (discussing the district court's reasoning and noting its conclusion that a privilege for state legislators was "necessary 'to protect the integrity of the [state's] legislative process.'").

In evaluating the district court's decision, the Supreme Court considered two arguments in support of a privilege for state legislators—that the privilege was ensconced in the federal common law and that a privilege was "compelled by principles of federalism rooted in our constitutional structure." *Gillock*, 445 U.S. at 366. The Court rejected both contentions. As to the federal common law, the Court observed that an earlier effort to amend the Federal Rules of Evidence had included nine specifically enumerated privileges. See *id.* at 367 (discussing Proposed Federal Rules of Evidence 501-513, H.R. Doc. No. 93-46, pp. 9-19 (1973)). The Court reasoned that, although not dispositive on the question, the absence of a legislative privilege from the proposed rules "suggest[ed] that the claimed privilege was not thought to be either indelibly ensconced in our common law or an imperative of federalism." *Gillock*, 445 U.S. at 368. The existence of a state law privilege in Tennessee's constitution did not mandate a different result. *Id.* ("Rule 501 requires the application of federal privilege law in criminal cases brought in federal court.").

5

The Supreme Court was similarly unconvinced by Gillock's federalism argument. After noting that the Constitution's Speech or Debate Clause had roots in power struggles in England between the monarchy and parliament, the Court emphasized that principles of *federalism* were not at the heart of the clause. "In deciding whether the principles underlying the federal constitutional speech or debate privilege compel a similar evidentiary privilege on behalf of state legislators, the analysis must look primarily to the American experience, including our structure of federalism *which had no counterpart in England*." *Gillock*, 445 U.S. at 369 (emphasis added). The Court reasoned that two interrelated rationales of the Speech or Debate Clause—the need to avoid "intrusion into the affairs of a coequal branch" and "the desire to protect legislative independence"—did not apply. As to the first speech-or-debate rationale, the Court reasoned that, unlike the relationship between monarch and Parliament, the federal government was already limited with respect to states. What is more, the Supremacy Clause "dictates that federal enactments will prevail over competing state exercises of power." *Gillock*, 445 U.S. at 370. And as for the independence of legislators, the Court noted that its earlier cases that expressed "sensitivity to interference with the functioning of state legislators" were civil cases. "Moreover, the cases in this Court which have recognized an immunity from civil suit for state officials have presumed the existence of federal criminal liability as a restraining factor on the conduct of state officials." *Id.* at 371-72 (citing *O'Dea v. Littleton*, 414 U.S. 488 (1974)).

Of course, the reasoning of *Gillock* does not inevitably lead to the denial of the Aldermen's motion. After all, in that case Gillock himself was the target of criminal wrongdoing. The issue upon which the Supreme Court granted certiorari in *Gillock* was "whether the federal courts in a federal criminal prosecution should recognize a legislative privilege barring the introduction of evidence of the legislative acts of a state legislator *charged*

6

with taking bribes * * * through exploitation of his official position." *Gillock*, 445 U.S. at 361-62 (emphasis added). And the language in the decision does not stray far from the way the Court framed the issue. Likewise, a Seventh Circuit case that was decided prior to *Gillock* and accords with its outcome arose from a similar factual setting. See *United States v. Craig*, 528 F.2d 773, 781 (1976) (Tone, J., concurring), adopted *en banc*, 537 F.2d 957, 958 (1976) (*per curiam*) ("[T]he protection afforded state legislators under the federal law for acts done in their legislative roles is based on the common law doctrine of official immunity."), cert. denied *sub nom Markert v. United States*, 429 U.S. 999 (1976).[3]

Nonetheless, another Supreme Court decision, *United States v. Nixon*, strongly suggests that the *Gillock* teaching should apply to the Aldermen. The *Nixon* case involved the efforts of the then-President of the United States to have quashed a third-party subpoena *duces tecum* in a criminal trial of former White House aides. 418 U.S. 683 (1974). Like the Aldermen here, President Nixon was not a defendant, but was asked to produce evidence—although the subpoena was for physical evidence (*duces tecum*) rather than testimony (*ad testificandum*). The President refused based on executive privilege. Although the Supreme Court recognized the interest of the executive in keeping decision-making confidential, the Court reasoned that the "privilege must be considered in light of our historic commitment to the rule of law." *Id.* at 708. In particular, the Court emphasized its "view that 'the twofold aim (of criminal justice) is that guilt shall not escape or innocence suffer.'" *Id.* at 709 (quoting *Berger v. United States*, 295 U.S.

---

[3] The Aldermen have not discussed *Craig* or its continued viability after *Gillock*. Chief Justice Burger's opinion for the Court in *Gillock* began by explaining that certiorari had been granted to resolve a split in authority among the circuits and specifically listed the Seventh Circuit's en banc opinion that adopted Judge Tone's concurrence. See *Gillock*, 445 U.S. 362 n.1. The Seventh Circuit does not appear to have explored Rule 501 in the context of legislative immunity and criminal trials since *Gillock*. The Seventh Circuit has, however, echoed the refrain in *Gillock* that "where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." *In re Witness Before Special Grand Jury 2000-2*, 288 F.3d 289, 294 (2002). In that case, the Seventh Circuit declined to extend the attorney-client privilege to government attorneys for the state, in a case involving political corruption.

78, 88 (1935)). The Court then elaborated on the point and its importance in deciding the evidentiary question:

> We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed *either by the prosecution or by the defense*.

*Id.* (emphasis added). Put simply, the fact that the Aldermen do not have their own liberty at stake does not militate in favor of an evidentiary privilege.

### B. The Aldermen Fail Adequately to Distinguish *Gillock*

Although the Aldermen point out in their reply brief the limited holding of *Gillock*, both the authorities they cite and their own arguments fail to address the *ratio decidendi* of the case—most cases can be distinguished, but what matters is whether the distinction makes a difference. *E.g.*, *Lucterhand v. Granite Microsys., Inc.*, 564 F.3d 809, 813 (2009). To that end, the Aldermen do cite a district court opinion from the Middle District of Pennsylvania, which involved legislators who were the targets of a grand jury investigation. In *In re Grand Jury Subpoena* (626 F. Supp. 1319 (M.D. Pa. 1986)), legislators who were the target of a criminal investigation moved to quash a subpoena *duces tecum*. The district court granted the motion, observing, as has Boender, that *Gillock* by its terms was limited to a defendant-legislator on trial. The court then concluded as a matter of federal common law that there is a legislative privilege. *Id.* at 1327-28.

There are multiple problems with the Aldermen's reliance on the Pennsylvania case, not the least of which is that the case was overturned by the Third Circuit. See *In re Grand Jury*,

821 F.2d 946, 958 (1987) (district court erred in failing to accord sufficient weight to *Gillock*; rejecting a qualified speech or debate privilege for state legislators although leaving open the possibility "of a more narrowly tailored privilege for confidential deliberative communications").[4] Like the Third Circuit, the Court respectfully disagrees with the analysis of the district court in *In re Grand Jury Subpoena*. In addition, it is far from clear based on the district court's reasoning in *In re Grand Jury Subpoena* that the court would have reached the result that the Aldermen desire given the posture of this case.

Although the *In re Grand Jury Subpoena* Court correctly stated that *Gillock* was distinguishable, the court described the contours of a common-law privilege based on arguments that *Gillock* took pains to reject. Specifically, the district court discussed the struggles between Parliament and the monarchy and the need for legislative independence as informing the analysis of what privilege should apply to state legislators. *In re Grand Jury Subpoena*, 626 F. Supp. at 1323-24. Then the court reasoned, in view of the history and purposes of the Speech or Debate Clause, that legislative immunity should be construed broadly. *Id.* at 1324. But as the foregoing discussion of *Gillock* fleshed out, the Supreme Court rejected the applicability of the Speech or Debate Clause to state legislators not because it was a criminal case and Gillock was its target, but because the historical concerns that led to the Speech or Debate Clause did not apply with equal force to states in light of our federal system. *Gillock*, 445 U.S. at 370. That rationale applies regardless of the nature of the investigation. Likewise, the *In re Grand Jury Subpoena* Court cited the need for legislative independence in recognizing a Rule 501 evidentiary privilege.

---

[4] The Court hastens to add that although the Aldermen did not cite this authority, the omission was not for want of diligence. The caption of the case changed in the course of the appeal; the case history of the Third Circuit's opinion does not include a citation to the district court's opinion; and the ultimate disposition of the district court's order does not appear in Westlaw's treatment of the case history. The Court located the Third Circuit opinion during its research into the question of legislative privileges and pieced together the fact that the district court opinion at issue in the Third Circuit was the opinion in *In re Grand Jury Subpoena*.

9

626 F. Supp. at 1328. But here, too, *Gillock*'s teachings are directly on point: "although principles of comity command careful consideration, our cases disclose that where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." 445 U.S. at 373. What is more, the *Gillock* Court relied upon the already-discussed *United States v. Nixon* case, in which the President was being called upon to offer evidence in a criminal prosecution in which he was not the target of prosecution (although he was named as an unindicted coconspirator).

And indeed, it is that additional gloss—the existence of a live prosecution—that indicates that even the Pennsylvania district court in *In re Grand Jury Subpoena* Court might not have reached the Aldermen's desired result here. In particular, the district court based its decision in part on the ability of federal investigators to develop evidence in a grand jury proceeding in ways that would not require legislators to reveal their deliberations. Although the court observed that obtaining the evidence by other means was hardly a given, the court "conclude[d] on the basis of the record" before it "that the injury that would inure to the integrity of the state legislative process by * * * enforcement of [the] subpoena outweigh[ed] the benefit to be gained by federal prosecutorial authorities." 626 F. Supp. at 1328. But there necessarily are a larger number of grand jury investigations than trials, and the interest in effecting prosecutions—and mounting defenses—is great. See *In re Witness Before Special Grand Jury 2000-2*, 288 F.3d at 295 (noting the federal interest and citing *Gillock*); *Matter of Special April 1977 Grand Jury*, 581 F.2d 589, 593 (7th Cir. 1978).

### C. The Aldermen Do Not Present a Basis for Recognizing a Common-Law Privilege

Finally, based on the record before the Court, the Aldermen have failed to come forward with the type of information and argument that would be necessary to recognize a privilege

under Rule 501. Although the Court is mindful of the comity concerns involved and the general desirability of not interfering with state and municipal legislative processes, the Court is unconvinced that legislators would be chilled in their deliberations by the possibility that one among their number could face trial.[5] The Supreme Court rejected that argument in the *Nixon* case. 418 U.S. 683, 712 (1974) ("[W]e cannot conclude that advisers will be moved to temper the candor of their remarks by the infrequent occasions of disclosure because of the possibility that such conversations will be called for in the context of a criminal prosecution."). The idea is that the low frequency of indictments and trials means that legislators would not temper their remarks out of fear of being hailed into court. That analysis does not conflict with the rationales of decisions that *have* recognized common-law immunity in the civil context, because private lawsuits, which may proliferate because of the large class of potential plaintiffs, "threaten to chill controversial issues or stances in order to protect themselves not only from the consequences of litigation's results but also from the burden of defending themselves." See *Biblia Abierta*, 129 F.3d at 903. In contrast, there is no evidence or argument that testifying as witnesses in criminal cases will impose burdens or lead legislators to steer clear of anything other than the wrong side of the law. Indeed, if the burdens of providing evidence as a non-defendant in a criminal case are not so great to excuse the President of the United States (see *Nixon*, 418 U.S. at 709-13), then surely such burdens cannot justify giving a pass to city aldermen. See *In re Grand Jury*, 821 F.2d at 957 ("When dealing with lesser governmental officials, courts have treated claims of privilege even more strictly").

The more fundamental point is that the Aldermen have not come forward with an indication that "worthwhile conduct will be deterred" (*Matter of Special April 1977 Grand Jury*,

---

[5] Or that legislators would be chilled in their deliberations by the possibility of being called in the trial of a defendant who is not among their number.

581 F.2d 589, 593 (7th Cir. 1978)), if the Court fails to recognize a privilege and that the desirability of that conduct "outweigh[s] the need for probative evidence in the administration of justice." *Trammel*, 445 U.S. at 50. The absence of argument on that point is fatal. *In re Witness Before Special Grand Jury 2000-2*, 288 F.3d at 295 ("[A] state privilege should not be recognized if it will impair legitimate federal interests and provide 'only speculative benefit' to a state official."); *United States v. Davies*, 768 F.2d 893, 899 (7th Cir. 1985) (refusing to recognize an evidentiary privilege under Rule 501 where there were only "generalized claims" about the need for a privilege). While the Aldermen devote considerable effort to arguing that there is a federal privilege that applies (and for that point they fail to provide authority), they do not present any argument about why the Court should carve out an evidentiary privilege that would apply in this case. All that is clear from the motion is that the Aldermen do not want to testify; they have not even argued that the public interest would be furthered by the absence of government sunshine in this case.

In that vein, the Court fails to see the benefits of opacity, especially considered against the strong interest of both the accused and the Government that the truth comes to light. *See, e.g.*, *Nixon*, 418 U.S. at 712 (noting that "the allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts"); *United States v. Wilson*, 960 F.2d 48, 50 (7th Cir. 1992) (refusing to recognize a state-law privilege in a federal criminal case and reasoning that the government's strong interest in enforcing criminal statutes "implies a strong policy favoring admissibility of relevant evidence in criminal cases"). What is more, the area of land use planning has been a notorious hotbed of corruption in which wrongdoing has been "relatively easy to hide." Robert C. Ellickson and Vicki L. Been, LAND USE CONTROLS: CASES

12

AND MATERIALS 308 (3d ed. 2005) (noting, despite the ease with which corruption may be cloaked, that "[t]he land use control system has long been tainted with discoveries and allegations of corruption."); see also, *e.g.*, *Sabri v. United States*, 541 U.S. 600, 602 (2004) (discussing the sufficiency of an indictment in a case involving bribes in exchange for zoning changes); *United States v. Krilich*, 159 F.3d 1020, 1026 (7th Cir. 1998) (upholding a conviction under RICO in a case that involved bribing a mayor for favorable zoning alterations); *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 635 (7th Cir. 1991) (recounting the criminal activities of a mayor that led to a civil suit); *Agan v. State*, 417 S.E.2d 156, 156-58 (Ga. 1992) (affirming convictions in a bribery case involving zoning); *Sawyer v. State*, 583 N.E.2d 795, 798 (Ind. Ct. App. 1991) (same); *State v. Fox*, 577 A.2d 1111, 1115 (Conn. App. Ct. 1990) (same); *People ex rel. Daley v. Warren Motors, Inc.*, 500 N.E.2d 22, 23 (Ill. 1986) (constructive trust over tax benefits illegally obtained in scheme to undervalue land); *In re Rosenthal*, 382 N.E.2d 257, 258-60, 262 (Ill. 1978) (disbarring lawyers who participated in an extortion scheme involving fees for zoning variances); Ashira Pelman Ostrow, *Judicial Review of Local Land Use Decisions: Lessons from RLUIPA*, 31 HARV. J. L. & PUB. POL'Y 717, 727 (2008) (arguing against deferential judicial review of zoning decisions, in contrast to most economic regulation, in part because a combination of structural factors "leaves ample room for inconsistency and corruption in the zoning process").

Comity demands respect for state interests, but it does not demand blinking away reality at the expense of strong federal interests. See, notably, *Powell v. State of Alabama*, 287 U.S. 45, 57, 73 (1932) (Sutherland, J.) (reversing the "Scottsboro Boys'" convictions where "the defendants did not have the aid of counsel in any *real* sense") (emphasis added). Given the admonition that evidentiary privileges are disfavored and therefore narrowly construed (*Shadur*,

664 F.2d at 1061), the absence of argument about a need for a privilege, the "reason and experience" (Fed. R. Evid. 501) of the law in this realm, and Justice Frankfurter's admonition that "[l]egislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good" (*Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)), the Court is not persuaded to recognize an evidentiary privilege for local legislators who have been called to testify in a criminal case.[6]

## III. Conclusion

For the foregoing reasons, the Aldermen's "motion to bar testimony" [82] is respectfully denied.

Dated: February 23, 2010

_____
Robert M. Dow, Jr.
United States District Judge

---

[6] Although the Court has concluded that a legislative privilege does not bar testimony by the Aldermen in this case, both of the pivotal Supreme Court cases stress that claims of privilege in circumstances like these give way to the right of the Defendant to present, and the interest of the judicial system to secure, "all *relevant* evidence in a criminal proceeding." *Gillock*, 445 U.S. at 373 (emphasis added); see also *Nixon*, 418 U.S. at 712 (emphasizing the need for "evidence that is demonstrably *relevant* in a criminal trial") (emphasis added). Relevance, of course, is a basic requirement for any and all evidence presented at a trial—criminal or civil. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Aldermen have stated their belief concerning the nature of the testimony that Defendant seeks to elicit from them; the Government has expressed its doubts as to whether evidence of that nature would be relevant; Defendant has described only in general terms the asserted relevance of testimony that could be provided by the Aldermen. As leading commentators have noted, relevance objections are "often difficult for the judge to decide, particularly before or during the early stages of a trial." Thomas A. Mauet & Warren D. Wolfson, TRIAL EVIDENCE 87 (3d ed. 2005). In the interest of efficient case management, the Court has set this matter for an attorney proffer on the relevance of the testimony that Defendant proposes to elicit at trial from Petitioners. To assist in preparation for that proceeding, counsel for Defendant expressed an interest in interviewing Petitioners, and noted that he already has interviewed two of the Petitioners. As stated on the record in open court at the pre-trial conference, the Court is not ordering Petitioners to speak with counsel; it is for Petitioners to decide whether they wish to speak with counsel.