**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 09 CR 186-1 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CALVIN BOENDER, | ) | |

**MEMORANDUM OPINION AND ORDER**

On February 26, 2009, a federal grand jury indicted Defendant Calvin Boender ("Boender"). Subsequently, a nine-count superseding indictment (the "Indictment") was issued on May 28, 2009. [See 8]. Before the Court is Boender's motion to dismiss several counts of the Indictment [73], which the parties have fully briefed [74, 77, 78]. For the reasons set forth below, the motion to dismiss [73] is respectfully denied.

**I.      Background**

Counts 1 through 4 of the Indictment charge Boender with committing mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1346. Count 5 charges Boender with "federal programs bribery" in violation of 18 U.S.C. § 666(a)(2). Counts 6 and 7 each charge Boender with campaign finance fraud in violation of 2 U.S.C. §§ 441f and 437g(d)(1)(A)(ii). Counts 8 and 9 each charge Boender with obstruction of justice in violation of 18 U.S.C. § 1503(a).

Boender's motion to dismiss targets Counts 1 through 4, 6, and 9 of the Indictment. As explained in Part III of this opinion, the motion to dismiss is denied as moot with regard to Counts 1 through 4. With respect to Count 6, Boender argues that the conduct that the United States of America (the "Government") has alleged does not amount to a crime. Although Boender has raised a pure issue of law that is amenable to resolution at the motion to dismiss phase, the Court agrees with the Government's contention that a prosecution may proceed on the

Government's proffered theory. With respect to Count 9, Boender argues that the charge cannot be proved without calling his former attorney as a witness and violating his constitutional rights and testimonial privileges. The Court concludes that Boender's argument is not properly amenable to resolution at the motion to dismiss phase because it requires the Court to look behind the indictment. Further, Boender has not presented the Court with sufficient evidence to entitle him to an evidentiary hearing on his prosecutorial misconduct argument; at the motion to dismiss phase, a defendant bears a heavy burden of showing that an evidentiary hearing is appropriate, and Boender has not satisfied that burden. The motion to dismiss therefore is denied as to Count 9 as well, and the evidentiary issues raised by Boender pertaining to that Count will be addressed separately in the context of the Court's rulings on the parties' motions *in limine*.

## II. Legal Standard

Federal Rule of Criminal Procedure 12(b)(3)(B) permits a party to make a pretrial motion that challenges the sufficiency of an indictment or information. The contents of an indictment or information, in turn, are spelled out in Federal Rule of Civil Procedure 7(c)(1). The Seventh Circuit teaches that an indictment is constitutionally adequate and complies with Rule 7(c)(1) where it (i) states the elements of the offense charged, (ii) fairly informs the defendant of the nature of the charge so that he or she may prepare a defense, and (iii) enables the defendant to plead an acquittal or conviction as a bar against future prosecutions for the same offense. *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997); see also *Hamling v. United States*, 418 U.S. 87, 118 (1974) (discussing precedent and describing when the language of the indictment will be deemed sufficient); *Russell v. United States*, 369 U.S. 749, 763 (1962) (among the criteria for gauging sufficiency of an indictment are whether it includes "the elements of the offense

intended to be charged" and whether is "sufficiently apprises the defendant of what he must be prepared to meet").

The Supreme Court has long held that "[a]n indictment returned by a legally constituted and unbiased grand jury, * * * if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. U.S.*, 350 U.S. 359, 362 (1956). Indictments are to be reviewed "on a practical basis and in their entirety, rather than in a hypertechnical manner." *United States v. Cox*, 536 F.3d 723. A motion to dismiss an indictment is not "a means of testing the strength or weakness of the government's case.'" *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). Thus, while an indictment may be dismissed if subject to a defense that raises a purely legal question (*United States v. Labs of Virginia, Inc.*, 272 F. Supp. 2d 764, 768 (N.D. Ill. 2003)), a defense that relates to the strength of the Government's evidence ordinarily must wait for the trial. *Moore*, 563 F.3d at 586 (inquiry at the motion to dismiss phase is to determine "if it's possible to view the conduct alleged" as constituting the crime alleged); *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) (noting the ordinary rule while affirming a district court that dismissed an indictment as to which, under the undisputed facts, "there was no case to prove").

## III.  Analysis

### A.  Counts 1 through 4: Mail and Wire Fraud

Boender's motion to dismiss Counts 1 through 4 targets charges of mail fraud and wire fraud. At the Court's January 29, 2010, status hearing, the Government indicated that it did not intend to pursue these counts and that it would notify Boender if it decided to deviate from that course. The Government subsequently has confirmed that if the case proceeds to trial on March 8, it will not pursue Counts 1 through 4 and has tendered a draft superseding indictment that omits those Counts. For these reasons, Boender's motion is denied as moot as to Counts 1

3

through 4, with the caveat that the Court will re-open the matter if trial does not proceed on March 8 and the Government later chooses to pursue these Counts.

### B.      Count 6: Campaign Finance Fraud

According to Boender, Count 6 must be dismissed because the plain language of the provision under which he was charged, 2 U.S.C. § 441f, "does not prohibit reimbursement of a campaign contributions."  Def. Mem. at 7.  Boender attempts to bolster his plain language argument with a structural argument:  because another provision, 2 U.S.C. § 441a uses the words "indirectly," "conduit," and "intermediary," Congress would have used similar language in § 441f had it wished to criminalize so-called conduit contributions.  Def. Mem. at 6-7.  If nothing else, Boender contends that the rule of lenity should apply and, therefore, that the statute should be construed in his favor, particularly given the First Amendment issues at stake.  *Id.* at 7.  The Court respectfully disagrees with Boender's contentions.

The provision under which Boender is charged in Count 6 provides:  "No person shall *make a contribution in the name of another person* or knowingly permit his name to be used to effect such a contribution * * *."  2 U.S.C. § 441f (emphasis added).  According to Count 6 of the Indictment, "On or about March 2, 2004, in the Northern District of Illinois and elsewhere, Calvin Boender * * * knowingly and willfully violated the Federal Election Campaign Act, which violation involved making contributions [as the term is defined in Title 2] to a federal candidate, in the names of others, and which violation aggregated $2,000 or more during a calendar year, by causing other persons to contribute to Candidate A, a candidate for the Office of the Member of the United States House of Representatives, and advancing funds to those persons and reimbursing those persons a total of at least $4,000 during the 2004 calendar year for their contributions."

The issue raised by Boender's motion is the meaning of "[to] make a contribution in the name of another person." According to Boender, Section 441f does not apply to "conduit contributions"[1] when an actual donor[2] (in this case Boender) gives money to a nominal donor, who in turn actually hands the money over to a campaign. To understand the disagreement, one must focus on the phrase "to make a contribution in the name of another person." The phrase admits of at least two different meanings. One interpretation is that it proscribes a situation in which an actual donor directly hands over money to a campaign but, when asked what his name is, provides the name of the nominal donor. (That appears to be Boender's construction.) Another interpretation, relied upon by the Government in this case, is that Section 441f applies to an actual donor who physically gives money to a nominal donor, who then hands money over to the campaign.

The Court agrees with Boender's observation that the most persuasive evidence of Congressional intent is the words chosen in the statute (*Utah v. Evans*, 536 U.S. 452, 496 (2002)), but the Court respectfully disagrees with the conclusion that the language of Section 441f plainly supports Boender's position. In many areas of law and life, a person can "make" something happen though various forms of action. As a general matter, the law is no stranger to the concept. One of the most obvious examples in criminal law relates to the law of murder, which attaches liability where a person causes the death of another even without physically delivering the deathblow. See, *e.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 714 (1997) (describing as well-established the common-law view that "[i]f one counsels another to commit

---

[1] The Court takes the term "conduit contributions" to mean both advancements and reimbursements.

[2] The Court uses the term "actual donor" to indicate who is providing the source funds, not to beg the legal question raised by Boender's motion to dismiss.

suicide, and the person by reason of the advise kills himself, the advisor is guilty of murder as a principal").

Similarly, the ordinary meaning of "to make a contribution" is broader than Boender's construction. Both the dictionary definition of "make" and the term's common usage suggest that Congress intended "mak[ing] a contribution" to capture both the source of funds and the nominal donor. It is true that one definition of the word "make" offers support for Boender's construction. THE NEW OXFORD AMERICAN DICTIONARY 1023 (2d ed. 2005) (def. 1) (direct conduct). But one of the other meanings is at once broader and not mutually exclusive: the word "make" means to "cause (something) to exist or come about; bring about * * * carry out, perform, or produce." *Id.* (def. 2). Thus, the dictionary definition of "make" supports the conclusion that one makes a contribution either by giving money to a nominal donor (the Government's theory of its case) or by directly giving money to a donee (Boender's interpretation of Section 441f). Likewise, both definitions are regularly employed in common usage: When people make something happen, they either do so directly or use instruments of one sort or another. A person may make a pie with their own hands, consistent with Boender's definition of the word. But a person also may make a payment to a creditor by writing a check, consistent with the Government's definition—the person "makes" the payment, but a drawor bank and drawee bank actually move the money, after a postal employee delivers the check to the recipient. Likewise, a head of state "makes war" through soldiers. See Kenneth Watkin, *Controlling the Use of Force: A Role for Human Rights Norms in Contemporary Armed Conflict*, 98 AM. J. INT'L L. 1, 11-12 (2004) (quoting the Swiss philosopher and diplomat Emmerich de Vattel's statement that the people who carry out war are only "instruments in [the sovereign's] hands").

Given the broad definitions of "make," Boender's only plain-language hope is the word "contribution." For that word to do work for Boender, the *sine qua non* of making a contribution would have to be the delivering of money rather than the provisioning of funds. Boender does not make that argument, apparently for good reason. Consistent with both the dictionary definition and common usage of the word "contribution," the term captures both money or other res and "the part played by a person or thing in bringing about a result * * *." NEW OXFORD AMERICAN DICTIONARY at 370.

That brings the Court to Boender's structural argument based on Section 441a. That section sets out dollar-amount limits on campaign contributions and, according to Boender, explicitly includes conduit contributions in what counts toward the limit. 2 U.S.C. § 441a(a)(8). In contrast, Section 441f does not specifically include conduit contributions (or any other definition of the term) within its proscriptions.

Boender's argument might be entitled to more extensive discussion were the Court writing on a clean regulatory slate, but that is not the case. The Federal Election Commission ("FEC") has promulgated a regulation interpreting Section 441f and that regulation is entitled to *Chevron*-type deference. *Shays v. Federal Election Comm'n*, 528 F.3d 914, 919 (D.C. Cir. 2008) (concluding that FEC regulations were entitled to *Chevron*-type deference). Application of *Chevron*'s two-step approach—ask first whether Congress has spoken precisely to the question at issue and then, if the answer is no, ask whether the agency's interpretation is reasonable (*Khan v. United States*, 548 F.3d 549, 554 (7th Cir. 2009))—supports the Government's construction of Section 441f.

Of course, based on the plain-language analysis above, the words of Section 441f itself are sufficiently clear (and broad), so that ordinarily there would be no need to proceed to

"*Chevron* Step 2."  But the Court acknowledges, as Boender argues, that because Section 441a

defines contributions in a manner that includes conduit contributions and Section 441f does not,

the difference in language injects some ambiguity into language that standing alone comfortably

encompasses both Boender's and the Government's proposed constructions.  However, the

canon of interpretation that differences in language within a statute are presumed to be

purposeful has limits, and one of those limits is embodied in *Chevron*.  See, *e.g.*, *Abbott Labs. v.*

*Young*, 920 F.2d 984, 987 (D.C. Cir. 1990) (different meanings to the same language may apply

where an agency interprets "an imprecise term differently in two separate sections of a statute

which have different purposes.").[3]  Although Section 441a injects some amount of arguable

ambiguity into the statutory scheme, the Court concludes that the FEC regulation that interprets

Section 441f is reasonable.  The agency regulation, adopted more than two decades ago and set

out at 11 C.F.R. § 110.4(b)(2)(i), provides that "[e]xamples of contributions in the name of

---

[3] Note that even without *Chevron* deference, the result would be the same.  Section 441a describes dollar-amount limits on campaign contributions.  The plain language of Section 441a—a relatively stout provision—evinces Congress's intention of providing considerable guidance in spelling out what, for purposes of contribution caps, counts toward the overall dollar limits.  The section includes and excludes various contributions (broadly defined) that might otherwise be non-obvious, and it directs parties on how they must report contributions.  Critically, Section 441a does not "allow" or "define" conduit contributions.  It directs parties to report the contributions in such a way that they do not run afoul of Section 441f—*i.e.*, so that they do not make conduit contributions.  See 2 U.S.C. § 441a(a)(8)

By comparison, Section 441f is Spartan and makes no pretense of aiming for the level of detail attained in Section 441a.  In light of the Supreme Court's frequent admonition that statutory interpretation is a holistic endeavor (*e.g.*, *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004)), the difference in the level of detail itself suggests that the breadth of Section 441f was intentional.  See *Vanscoter v. Sullivan*, 920 F.2d 1441, 1448 (9th Cir. 1990) (different policy concerns may lead to different constructions of "[i]dentical words appearing more than once in the same act, and even in the same section * * * if it appears they were used in different places with different intent"); see also *Parents Involved in Commty Schs. v. Seattle Dist. No. 1*, 285 F.3d 1236, 1245 n.9 (2002), withdrawn in order to certify an issue of state law, 294 F.3d 1084 (9th Cir. 2002).  Mr. Boender's argument would have more force if both (1) Section 441f were set out in painstaking detail *and* (2) the conduit-contribution "definition" of Section 441a were omitted from 441f.  *Cf.* also *Koons Buick Pontiac*, 543 U.S. at 65-66 (Stevens, J., concurring) (advising against "rote repetition of canons of construction" when to do so would conflict with "common sense").

another include [g]iving money * * * all or part of which was provided to the contributor by another person (the true contributor) without disclosing the source of money * * * to the recipient candidate * * *."). Because, as discussed above, the agency regulation essentially encompasses the ordinary meaning of the verbal phrase, the regulation does not founder on *Chevron*'s shoals. Nor is the result different because this is a criminal matter: at least some amount of deference to an FEC interpretation of FECA is appropriate in criminal cases. *In re Sealed Cases*, 223 F.3d 775, 779 (D.C. Cir. 2000). Although the Seventh Circuit has not explicitly weighed in on the question of precisely how much deference is owed to the FEC's interpretation of an FEC regulation (see *supra* note 4), a small modicum of deference tips the scale even more decidedly to the FEC's and Government's interpretation.[4]

The conclusion that Section 441f proscribes the conduct with which Mr. Boender has been charged comports with numerous cases that have either assumed or reasoned that Section 441f should bear that meaning. See *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 232 (2003) (reasoning that Section 441f would bar a parent from making a donation in the name of a child), overruled in part on other grounds, *Citizens United v. Federal Election Comm'n*, No. 08-205, 2010 WL 183856 (Jan. 21, 2010); *Mariani v. United States*, 212 F.3d 761, 775 (3d Cir.

---

[4] The Tenth Circuit, on at least one occasion in a criminal case, has accorded *Chevron*-type deference to an agency interpretation of a statute which the agency administered. See *United States v. Hubenka*, 438 F.3d 1026, 1032-33 (10th Cir. 2006) (Clean Water Act prosecution). Other courts, however, have withheld *Chevron*-type deference when criminal liability might attach, concluding only that "some deference" is appropriate. See *United States v. Orellana*, 405 F.3d 360, 369 (5th Cir. 2005); *NLRB v. Okl. Fixture Co.*, 332 F.3d 1284, 1286-87 (10th Cir. 2003) (concluding that "some degree of deference" is owed to an agency's interpretation at where agency norms of interpretation do not conflict with interpretive norms regarding criminal statutes). The two Tenth Circuit cases cited above appear to conflict with one another. To the extent that the Seventh Circuit has weighed in on the question, the case law tends to support the position that *Chevron*-type deference would be appropriate so long as the agency is interpreting a provision that it has been charged with administering. See *Flores v. Ashcroft*, 350 F.3d 666, 671 (7th Cir. 2003) (no deference to Board of Immigration Appeals regulation because Congress had not "delegate[d] any power to the immigration bureaucracy"); see also *Oyebanji v. Gonzales*, 418 F.3d 260, 262 (3d Cir. 2005) (Alito, J.) (no deference to Board of Immigration Appeals interpretation of a criminal statute where BIA was not "charged with administering" it and had "no special expertise" with regard to interpreting the statute).

2000) (en banc) (upholding a conviction under Section 441f where the Government's indictment alleged both meanings of the phrase "making a contribution" that the Court has discussed above); *Goland v. United States*, 903 F.2d 1247, 1251 (9th Cir. 1990) (stating that Section 441f guards against evasion of campaign finance restrictions by "prohibit[ing] the use of 'conduits'"); *United States v. Hsu*, 643 F. Supp. 2d 574, 576 (S.D.N.Y. 2009) (denying a motion for judgment of acquittal based on sufficiency of the evidence in a case in which the defendant convinced people to make donations to a candidate that they had never heard of but were later reimbursed by the defendant). Although Boender is correct that these cases do not furnish clear holdings, Boender is incorrect that courts have described Section 441f as pertaining to conduits merely "in passing." Def. Reply at 2. In *McConnell v. Federal Election Comm'n*, the Supreme Court rejected the Government's arguments that a ban on donations by minors was sufficiently tailored to overcome First-Amendment scrutiny in part because Section 441f already addressed the concerns that the government argued had motivated the ban on donations by minors—namely conduit contributions by parents using their children as straw men. 540 U.S. at 231-32. Thus, the interpretation of Section 441f was part of the Court's analysis, not stray dicta. The same is true of precedent from the D.C. Circuit that characterizes Section 441f as barring conduit contributions. See, *e.g.*, *United States v. Kanchanalak*, 192 F.3d 1037, 1043 n.10 (D.C. Cir. 1999) (discussing the interaction of Sections 441f and 441e); *United States v. Hsia*, 176 F.3d 517, 523-24, 525 (D.C. Cir. 1999) (discussing the interaction of Sections 441f, 441a(a)(8), and 434(b)(3)).

Finally, because of the clarity of the statutory scheme and the implementing regulations, the rule of lenity does not apply to Boender's alleged conduct. In *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, the Supreme Court rejected a lenity-based

argument and strongly suggested that on-point agency regulations militate against application of the rule of lenity. 515 U.S. 687, 704 n.18 (1995) (noting in the context of a facial challenge to an agency regulation which had accompanying criminal penalties that "[e]ven if there exist regulations whose interpretations of statutory criminal penalties provide such inadequate notice of potential liability as to offend the rule of lenity, the * * * regulation [in this case], which has existed for two decades and gives a fair warning of its consequences, cannot be one of them"). As in *Sweet Home*, the regulations here provide "a fair warning of [the] consequences" for would-be violators. And as in *Sweet Home*, the regulatory prohibition in question has been on the books for decades. See *Affiliated Committees, Transfers, Prohibited Contributions, Annual Contribution Limitations and Earmarked Contributions*, 54 Fed. Reg. 34098-01, 34105 (Aug. 17, 1989). Furthermore, the language of Section 441f refutes the argument that the statute does not provide "fair warning * * * to the world in language that the common world will understand." *Id.* (quoting *United States v. Bass*, 404 U.S. 336, 347-50 (1971)). Even if Section 441a injects some ambiguity into the statutory scheme, the Supreme Court has emphasized that "[t]he simple existence of some statutory ambiguity * * * is not sufficient to warrant application of [the rule of lenity], for most statutes are ambiguous to some degree." *Muscarello v. United States*, 524 U.S. 125, 138 (1998). Because the Government's theory of the case captures the common usage of the words in Section 441f, not to mention the FEC's longstanding construction of that section, it is no "trap for the unwary." *Bates v. United States*, 522 U.S. 23, 31 (1997); see also *Muscarello*, 524 U.S. at 138 (for lenity to apply, the statute must suffer from "grievous ambiguity or uncertainty").

In sum, the Court respectfully disagrees with Boender's contention that the plain language of Section 441f supports his position. Rather, because the agency acted pursuant to

notice and comment rulemaking (*e.g.*, *Affiliated Committees, Transfers, Prohibited Contributions, Annual Contribution Limitations and Earmarked Contributions*, 54 Fed. Reg. 34098, 34098 (Aug. 17, 1989) (NPRM issued in 1986)) with regard to a statute that it has been tasked with administering (2 U.S.C. § 437c(b)(1)), deference to the agency is appropriate. See *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001); *Shays*, 528 F.3d at 919. The agency's interpretation is not unreasonable. Therefore, the motion to dismiss Count 6 of the Indictment is denied.[5]

### C.    Count 9

Boender's motion to dismiss Count 9 cannot be resolved at the motion to dismiss phase. Unlike with respect to Count 6, Boender's argument that the Government's theory of Count 9 does not constitute a crime would require the Court to look behind the indictment. In a heading that is titled "Count 9 Fails to State a Crime," Boender presents information that goes beyond the facts of the indictment and addresses the sufficiency of the evidence that the Government may offer. See Def. Mem. at 9-10. Boender further argues that evidence that the Government will offer was procured through prosecutorial misconduct. In particular, according to Boender, Government lawyers either encouraged or acceded to a prior attorney's decision to furnish inculpatory material that was not at that time subject to a subpoena.

Boender's arguments cannot be resolved at this time. As a general matter, "[w]e know * * * that [a] conviction cannot be overturned by showing that the indictment is founded on inadequate or incompetent evidence, such as hearsay evidence that would be inadmissible in the criminal trial or even evidence procured in violation of the defendant's constitutional rights. And we know these things from decisions by the Supreme Court that seem to go out of their way to

---

[5] The Court has closely examined and respectfully disagrees with the decision in *United States v. O'Donnell*, No. CR 08-00872-SJO, slip op. at 2-7 (C.D. Cal. June 8, 2009), interlocutory appeal pending, No. 09-50296 (9th Cir.), in which a California district court reached a contrary result.

prevent delving beneath the face of the indictment." *United States v. Roth*, 777 F.2d 1200, 1203 (7th Cir. 1985). A motion to dismiss an indictment is not a moment in the life of a criminal case for the Court to evaluate whether the prosecution ultimately may procure a conviction. *United States v. Apple*, 927 F. Supp. 1119, 1121 (N.D. Ind. 1996). But that is precisely what Boender seeks in this motion. The *Roth* case itself teaches that evidentiary infirmities at trial do not provide fertile ground for dismissing an indictment. Therefore, Boender's arguments regarding the sufficiency of evidence cannot furnish the basis for a successful motion to dismiss.

The prosecutorial misconduct argument stands on a slightly different footing, although not solid enough in this case. In order for Boender to prevail on a motion to dismiss an indictment based on prosecutorial misconduct, he must show not only that there was prosecutorial misconduct but that the misconduct prejudiced the grand jury proceedings. *United States v. Anderson*, 61 F.3d 1290, 1296 (7th Cir. 1995) ("As a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced defendants.") (brackets omitted). In order to obtain an evidentiary hearing at the motion to dismiss phase, a defendant bears a heavy burden. As Judge John Minor Wisdom explained, it is proper for a district court to deny a motion to dismiss based on prosecutorial misconduct where the defendant has not presented "concrete evidence suggesting misconduct." *Matter of Special April 1977 Grand Jury*, 587 F.2d 889, 892 (7th Cir. 1978) (Wisdom, J., sitting by designation).

The single affidavit, which Boender submitted only with his reply memorandum, in support of his motion is not sufficient to meet the "heavy burden" required to obtain an evidentiary hearing on a motion to dismiss. At a minimum, documents that would bear on the question—including the subpoena whose scope Boender's earlier attorney is said to have disregarded—have not been presented to the Court. Whether the evidence which Mr. Boender

contends was procured through misconduct and in violation of the attorney-client privilege can come in at trial is an evidentiary question better resolved in an evidentiary motion.[6] Therefore, the motion to dismiss Count 9 is denied.

## IV. Conclusion

For the reasons stated above, the motion to dismiss the Indictment [73] is respectfully denied.

Dated: February 24, 2010

_____
Robert M. Dow, Jr.
United States District Judge

---

[6] In fact, as noted at the outset, motions *in limine* presenting those issues are pending and will be addressed in separate opinions.