# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE No. 09-cr-186-1 |
| | ) | |
| CALVIN BOENDER | ) | Judge Robert M. Dow, Jr. |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Calvin Boender's "Motion for Permission of the Court to Communicate with Jurors" [173]. For the reasons set forth below, Defendant's motion is denied.

## I.    Background

On, March 18, 2010, a jury found Defendant guilty of five offenses under the laws of the United States [185]. Of particular pertinence here was the jury's determination that Defendant violated 18 U.S.C. § 666 (federal program bribery) by corruptly giving things of value to former Chicago Alderman Isaac Carothers ("Carothers"). Unsurprisingly, Carothers was mentioned frequently by counsel and by witnesses at trial, though he had pled guilty to various charges prior to trial and was not called as a witness by either side during the trial.

After the jury rendered its verdict and was discharged, the Chicago Sun-Times published an article that included brief comments by two jurors. One juror's comments were anonymously given and have not been singled out by Defendant.[1] The other comments were made by Jennifer Melberg, Juror No. 26. The specific quotations of concern to Defendant were (1) "I was surprised Ald. Carothers wasn't there" and (2) "I thought he would be part of the story because he was part of the story." Def. Reply at 1; see also Natasha Korecki & Art Golab, *Boender*

---

[1] "'It was a difficult decision,' said a woman juror who spoke only on the condition she not be identified. 'We made it based on the evidence.'" Natasha Korecki and Art Golab, *Boender Guilty on all Five Counts: 'Difficult Decision' Based on Evidence, Juror Says of Case of Bribing Alderman*, CHI. SUN-TIMES 4 (Mar. 19, 2010).

*Guilty on all Five Counts: 'Difficult Decision' Based on Evidence, Juror Says of Case of Bribing Alderman*, CHI. SUN-TIMES 4 (Mar. 19, 2010).

Defendant filed the instant motion based on Juror No. 26's quotations, as well as the fact that accounts of the proceedings were published and broadcast daily during the trial. Def. Mot. at 1. Defendant's motion seeks an order that would allow his attorneys and investigators to communicate with jurors—not only or even necessarily Juror No. 26, but any juror who proves willing. Defendant states that his motion was made pursuant to Local Criminal Rule 31.1, as well as the Fifth and Sixth Amendments to the United States Constitution. Local Criminal Rule 31.1 bars parties and their agents from engaging in post-trial communications with jurors "without first receiving permission of the court." The Sixth Amendment provides that an accused is entitled to a trial before an "impartial jury" and may confront the witnesses against him. See U.S. CONST. amend. VI; *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991) ("Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right."); *Parker v. Gladden*, 385 U.S. 363, 363 (1966) (per curiam) (stating that the Sixth Amendment right to an impartial jury includes the requirement that the evidence against the accused "come from the witness stand in a public courtroom" so that witnesses may be confronted and cross-examined); see also *Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen").

**II.     Analysis**

Courts generally are reluctant to pull back the curtain on juror deliberations. See *Tanner v. United States*, 483 U.S. 107, 120-21 (1987). "[F]ull and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct." *Id.* The rule against jury testimony in an effort to impeach jury verdicts is well established. See, *e.g.*, *McDonald v. Pless*, 238 U.S. 264, 265 (1915) (upholding in a civil case the trial court's refusal to allow inquiry into the jury's method of arriving at a damages award); *Mattox v. United States*, 146 U.S. 140, 148 (1892) (explaining in a criminal case the public policy considerations motivating the rule).

At common law, however, there were exceptions to the general bar on juror testimony. Thus, although matters intrinsic to jury deliberations almost always were off limits, extraneous influences could be explored. For example, in *Mattox*, the Supreme Court concluded that a defendant was entitled to a new trial where a bailiff made statements regarding the defendant's guilt and the jurors were presented with a newspaper article that similarly opined on the guilt of the defendant. 146 U.S. at 150-51 ("It is not open to reasonable doubt that the tendency of that article was injurious to the defendant."); see also *United States v. Thomas*, 463 F.2d 1061, 1063 (7th Cir. 1972) (severity of the threat to Sixth Amendment rights from publicity depends on the nature of the publicity and the jury's degree of exposure to it); *id.* (concluding that the district judge, "when presented with evidence indicating that a prejudicial news article was actually present in the jury room and, more importantly, that it was in fact used by some jurors to persuade others, was at the very minimum required to investigate further"); *United States v.*

*McKinney*, 429 F.2d 1019, 1023 (5th Cir. 1970) ("it has been repeatedly recognized that newspaper publicity can so prejudice a jury's deliberations that a fair trial is unattainable").

Rule 606(b) of the Federal Rules of Evidence is "grounded in" the common law rule against impeaching verdicts through juror testimony. *Tanner*, 483 U.S. at 121. The rule creates an exception to the broad witness competency provision of Rule 601[2], providing that a juror is not competent to testify about matters intrinsic to the jury's decision-making. However,

> a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Rule 606(b), like the common law rules that it followed, thus draws a distinction between matters intrinsic to juries' decision-making processes and "extraneous influences." *United States v. Paneras*, 222 F.3d 406, 411 (7th Cir. 2000) (collapsing, as many courts have done, the language of the first and second exceptions to Rule 606(b)'s general bar). For example, while a juror is not competent under the Federal Rules of Evidence to testify about a jury-room squabble (*e.g.*, *Jacobsen v. Henderson*, 765 F.2d 12, 14-15 (2d Cir. 1985) (no inquiry into deliberations marked by "hysterical crying" and even chair-throwing)), allegations that a judge had prejudicial conversations with the jury (*e.g.*, *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 488 (3d Cir. 1985); *United States v. Davis*, 109 F. Supp. 2d 991, 995-95 (S.D. Ill. 2000)) may be examined. See also 27 Charles Alan Wright & Victor James Gold, FEDERAL PRACTICE AND PROCEDURE § 6074, at 497-98 (2d ed. 2007) (noting the difficulties that may arise in

---

[2] "Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law." Fed. R. Evid. 601.

4

distinguishing between a juror's (permissibly examined) perceptions and her (barred) inferences).

The issue raised by Defendant's motion, however, is distinct from the intrinsic-extraneous taxonomy of Rule 606(b). The Court agrees with Defendant (Def. Mot. at 1-2) that "[j]uror exposure to press coverage" during trial or deliberations may fall on the admissible side of the Rule 606(b) line. But the question for purposes of deciding the instant motion is whether the quotations in the Chicago Sun-Times story merit further inquiry, including hailing a juror into court[3] for purposes of further investigation.

In *United States v. Moten*, 582 F.2d 654 (2d Cir. 1978), the Second Circuit faced the precise legal issue that is presented here, although with starkly different facts. There, a defendant's sister alleged that she has been approached by a juror and corroborating evidence indicated that the juror's vote could be purchased. The juror was dismissed, but there was evidence that another juror had been standing with the dismissed juror just prior to his apparently corrupt attempt to sell his vote and that the other juror may have been someone who dined with and got along quite well with the dismissed juror. (The defendant learned the pertinent details after the trial, so there was no waiver issue.) On those facts, the Second Circuit held that the district court erred in "denying completely Moten's permission to conduct some form of inquiry" into a possible jury taint. *Id*. at 666-67. "When there has been a showing warranting an investigation, barring all interviewing, even under supervision of the court, is improper." *Id.* at 666.

In analyzing the threshold issue of whether an investigation was warranted, the Second Circuit noted that competing interests were implicated by the defendants' motion:

---

[3] Although Defendant seeks permission to have his agents conduct the interviews, that request is a non-starter, for reasons that the Court explains below. See Part III, *infra*.

> On the one hand, the proper functioning of the jury system requires that the courts protect jurors from being harassed and beset by the defeated party * * *. In addition, certain limits on post-trial inquiry into jury verdicts are necessary in the interest of finality lest judges become Penelopes, forever engaged in unraveling the webs they wove. On the other hand, the defendant has a right to an impartial jury, unprejudiced by extraneous influence, and when reasonable grounds exist to believe that the jury may have been exposed to such an influence, the entire picture should be explored.

*Moten*, 582 F.2d at 664 (quotation marks and citations omitted). At the same time, the Court cited numerous cases "for the unexceptional proposition that a convicted defendant should not be allowed to waste the time of a district judge or inconvenience jurors merely to conduct a fishing expedition." *Id.* at 667-67 (collecting cases). And in another case, *King v. United States*, 576 F.2d 432 (2d Cir. 1978), the Second Circuit held that "to authorize a post-verdict inquiry" into whether a juror had obtained extraneous prejudicial material while being sequestered, "there must be 'clear evidence, 'strong evidence,' 'clear and incontrovertible evidence,' 'substantial if not wholly conclusive evidence.'" *Id.* at 438. The "frail and ambiguous showing" in that case—which consisted of "weakly authenticated, vague, and speculative material as to one juror"—was insufficient. *Id.*

The Seventh Circuit has indicated that it agrees with the basic approach of *Moten*, although it has not used language quite as strong as that which was used in *King*. In *United States v. Davis*, 15 F.3d 1393, 1412-13 (7th Cir. 1994), the Seventh Circuit held that before a party can invoke Rule 606(b)—more properly, the rule's exceptions—that party must "come[] forward with a colorable allegation of taint." *Id.* In *Davis*, the court of appeals concluded that a district judge did not err when it denied a post-trial motion to question a recalled alternate juror about whether the juror had been exposed to media after having been dismissed. Other circuits have employed roughly identical approaches when examining issues related to alleged or potential jury taints. *E.g.*, *United States v. Wintermute*, 443 F.3d 993, 1002-1003 (8th Cir. 2006);

*United States v. Cheek*, 94 F.3d 136, 141 (4th Cir. 1996); *United States v. Caldwell*, 776 F.2d 989, 998 (11th Cir. 1985).

In this instance, Defendant contends that juror interviews in this case likely "will yield admissible evidence under Rule 606(b) of the Federal Rule of Evidence." Def. Mot. at 1. He bases the contention on (1) Juror No. 26's statements as reported in the Chicago Sun-Times article and (2) the fact that there was extensive publicity of the proceedings during the trial. The latter basis is infirm and does not require extensive discussion.[4] Therefore, the Court will consider only whether further investigation is warranted based on the Chicago Sun-Times article. Because the showing made by Defendant is "frail and ambiguous" (*King*, 576 F.2d at 438), further inquiry is neither necessary nor appropriate.

As a threshold matter, the Court observes that Defendant's motion is too broad, and properly could be denied on that basis alone. The motion seeks permission to interview all of the jurors—not limited to, or even necessarily including, Juror No. 26. However, the case law teaches that the scope of any investigation should be based on the factual allegations that are before the Court. See *Moten*, 582 F.2d at 668 (authorizing an "initially * * * limited" examination of jurors, which could be expanded if necessary); *cf.* also *Marshall v. United States*, 360 U.S. 310, 313 (1959) (reasoning that each case of prejudice resulting from extraneous news article "must turn on its special facts"). Moreover, as the court of appeals has cautioned, post-verdict interrogation of jurors requires careful supervision by the trial court: "[S]upervision is desirable not only to protect jurors from harassment but also to insure that the inquiry does not

---

[4] Had Defendant been concerned about juror exposure to prejudicial information during trial, he could have requested that the Court ask the jurors, daily, whether they had seen news reports. As it was, the Court admonished the jury repeatedly throughout the trial to steer clear of news reports about the case. Defendant did not ask the Court to do more. Because a mere risk that a juror was exposed to publicity is not sufficient to merit further inquiry (*Davis*, 15 F.3d at 1413 ("the risk that a juror will be subject to outside forces is a fact of life")), the fact of trial publicity does not provide a solid basis for conducting a post-verdict inquiry.

7

range beyond subjects on which a juror would be permitted to testify under Rule 606(b)." *United States v. Moten*, 582 F.2d at 665. Thus, the breadth of Defendant's motion renders it unacceptable at the outset: even if the Court were to allow a limited inquiry, the Court would exercise its supervision over the investigation and allow questioning of only those jurors as to whom a sufficient showing has been made.

The question remains whether a sufficient showing has been made with respect to Juror No. 26, based on the statements that she reportedly made to the Chicago Sun-Times. Again, the quotations were (1) "I was surprised Ald. Carothers wasn't there" and (2) "I thought he would be part of the story because he was part of the story." Korecki & Golab, *Boender Guilty*, *supra*, at 4. The modest expression of juror surprise to which Defendant points simply indicates that the juror anticipated (or perhaps even expected) that an individual who was mentioned frequently during the trial would be called as a witness. Yet, inquiry into a juror's surprise at the evidence that is presented at trial and her thoughts about the evidence are flatly barred by hundreds of years of common law and the Federal Rules of Evidence, because they relate to juror mental processes. See, *e.g.*, *Tanner*, 483 U.S. at 118 (courts "wisely" treat allegations that the jury misunderstood the jury instructions as an internal matter); *Vaise v. Delaval*, 99 Eng. Rep. 944, 945 (K.B. 1785) (Mansfield, J.); Fed. R. Evid. 606(b) ("a juror may not testify as to * * * the effect of anything upon * * * [any] juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith").

In addition, there is no indication from Juror No. 26's statements that she (or any other juror) disregarded the Court's repeated instruction to avoid news coverage of the trial. Rather, the statements suggest that the juror was paying attention to the trial itself, in which Carothers—

as well as his house, his zoning efforts on behalf of Defendant, and his acceptance of nearly $40,000 in home improvement work—was in one form or another the subject of testimony by nearly every witness who took the stand. The conclusion that Defendant's motion asks the Court to reach, which is that quotations in the article constitute a "colorable allegation of taint" (*Davis*, 15 F.3d at 1412), simply is not warranted. Any such conclusion would depend on highly aggressive inference-making that the case law counsels against: indeed, the case law teaches that speculative nature of Defendant's showing is fatal to his request. *E.g.*, *Caldwell*, 776 F.2d at 998 ("The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate").

In arguing that he should be allowed to interview the jurors, Defendant both cites and distinguishes *United States v. Warner*, 2006 WL 2583722 (N.D. Ill. 2006), a case in which Judge Pallmeyer declined to allow a defendant to interview two jurors and then subsequently declined to grant a mistrial. Defendant distinguishes *Warner*, apparently on the basis that jurors in that case were found to have been exposed to media but *not prejudiced* by the reports. Def. Reply at 2. "Unlike in *Warner*, Defendant's request to interview jurors is based on the allegation that extraneous *prejudicial* information was improperly brought to the jury's attention." *Id.* (emphasis added). The Court respectfully disagrees: Defendant incorrectly conflates his unsupported allegation with the colorable showing that courts require. "A bald assertion of taint will not suffice." *United States v. Schoppert*, 362 F.3d 451, 459 (8th Cir. 2004); see also *United States v. Infelise*, 813 F. Supp. 599, 605 (N.D. Ill. 1993) ("Under Rule 606(b), a post trial hearing should only be held when a party comes forward with clear, strong, substantial, and incontrovertible evidence that a specific, non-speculative impropriety has occurred.") (quotation marks and alterations omitted).

Other cases that have raised this issue in a manner that required the district court to conduct an investigation involved far more than intimations. For example, in *United States v. Thomas*, 463 F.2d 1061 (7th Cir. 1972), a juror contacted the defendant's wife claiming that something "very wrong" took place in the jury room. The "very wrong" conduct was that "several jurors had copies of a newspaper article about the case" from the Chicago Tribune. *Id.* at 1062. During deliberations, the juror claimed, those who voted to convict referred repeatedly to the article. *Id.* In overturning the defendant's conviction, the Seventh Circuit held that "the district court, when presented with evidence indicating that a prejudicial news article was actually present in the jury room and, more importantly, that it was in fact used by some jurors to persuade others, was at the very minimum required to investigate further." *Id.* at 1063.

In so ruling, the Seventh Circuit repeated the Supreme Court's admonishment that each case should be considered according to its facts. In *Thomas*, the article in question was "prejudicial on its face." *Thomas*, 463 F.2d at 1064. But here, Defendant is asking the Court both to infer that Juror No. 26 was exposed to news reports and that those (ethereal) news reports were prejudicial. Yet, Defendant has not even come forward with any evidence that there were news reports published during the trial that contained prejudicial information, much less that any juror saw any news reports during the trial, further weakening the already-insufficient basis for conducting further inquiry. See also 27 FEDERAL PRACTICE AND PROCEDURE § 6075 at 559 & n. 92 (collecting cases for the proposition that "[t]he party attacking the verdict always has the full burden of proving that the jury was exposed to extraneous *prejudicial* information") (emphasis added); *People v. Gambino*, 145 N.E.2d 42, 46 (1957) ("Before it can be said that the jurors have been influenced and prejudiced by the articles in question to the extent that they cannot be fair

and impartial, facts and circumstances must appear from which it is reasonable to infer that one or more of them had read the newspaper accounts.").

The Seventh Circuit has stated that "the risk that a juror will be subject to outside forces is a fact of life" (*Davis*, 15 F.3d at 1413), but because Defendant has offered no evidence that juror exposure to "extraneous prejudicial information" was a reality in the life of this case, his motion for permission to communicate with jurors must be denied.

### III. Conclusion

For the reasons set forth above, Defendant's "Motion for Permission of the Court to Communicate with Jurors" [173] is denied.

Dated: March 30, 2010

Robert M. Dow, Jr.
United States District Judge