# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE No. 09-cr-186-1 |
| | ) | |
| CALVIN BOENDER. | ) | Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner[1] Anthony Barone's motion to quash Defendant's subpoena for records related to prior state court jury service by the jury foreperson in this case [201]. For the reasons set forth below, Petitioner's motion is granted.

**I.     Background**

On, March 18, 2010, a jury found Defendant guilty of five offenses under the laws of the United States [185]. Defendant subsequently filed a motion to communicate with the jurors, which the Court denied [187]. The Court made that ruling after concluding that Defendant had made, at best, a "frail and ambiguous showing" of juror taint; therefore, additional inquiry was "neither necessary nor appropriate" [187, at 7] under the established framework for investigating improper juror influence.

On or about April 20, 2010, Defendant served on Anthony V. Barone ("Barone") a subpoena for documents and testimony related to prior state-court jury service by the foreperson in this case. Mr. Barone is the Jury Administrator for the Circuit Court of Cook County. Barone moved to quash the subpoena, contending that the subpoena is unreasonable and oppressive because disclosing the information that Defendant seeks would not prove legally useful to him. The subpoena seeks copies of any records showing dates of jury service by the foreperson, the

---

[1] Barone characterizes himself as a respondent, but he is a petitioner in this Court.

case captions and file numbers of those cases, and the names and addresses of the other jurors in those cases.

## II. Analysis

Rule 17 of the Federal Rules of Criminal Procedure provides: "A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). Although the structure of the federal rules as well as Rule 17's plain language suggest that the rule was meant to apply only before trial,[2] courts have held that Rule 17 affords parties the ability to subpoena evidence for post-trial matters. *United States v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981) (there is "no reason why [Rule 17(c) subpoenas] should not be available for post-trial motions and sentencing"); see also 2 Wright & Henning, FEDERAL PRACTICE AND PROCEDURE § 275, at 242 (4th ed. 2009) (observing that Rule 17 subpoenas may issue for preliminary hearings, grand jury investigations, depositions, pre-trial matters, and "for post-trial motions"). However, courts have made clear that Rule 17 is not "a general discovery device." *United States v. Henry*, 482 F.3d 27, 30 (1st Cir. 2007) (citing *United States v. Nixon*, 418 U.S. 683 (1974)); see also *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)).

Critically, the Federal Rules of Criminal Procedure state that "the court may quash or modify" a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). In *United States v. Nixon*, the Supreme Court endorsed a four-part test used for evaluating Rule 17 subpoenas. 418 U.S. at 699 (citing, with approval, *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)). Adapting the *Nixon/Iozia* formulation to the post-trial

---

[2] The rule states that the court "may direct the witness to produce the designated items in court *before* trial or before they are offered into evidence" (Fed. R. Crim. P. 17(c)(1)), and the rule is situated in Part IV of the Federal Rules of Criminal Procedure, which pertains to "Arraignment and Preparation for Trial" rather than Part VII, which deals with post-conviction proceedings, or Part IX, which includes general provisions.

2

setting, the Tenth Circuit has ruled that "the party seeking production of documents must show: (1) that the information is evidentiary and relevant; (2) that it is not otherwise procurable in advance through the exercise of due diligence; (3) that the party seeking production cannot properly prepare for post-trial motions or sentencing without advance inspection; and (4) that the application is made in good faith and is not simply intended as a general 'fishing expedition.'" *Winner*, 641 F.2d at 833.[3]

Defendant has not shown that those elements are satisfied in this case. And, in fact, Defendant's brief indicates that he is seeking to use Rule 17 as a general discovery device, which the Supreme Court has barred. *Bowman Dairy*, 241 U.S. at 220-21 ("the plain words of [Rule 17] are not to be ignored" and "must be given their ordinary meaning to carry out the purpose of establishing a more liberal policy for the * * * use of materials *at trial*" (emphasis added)). According to Defendant, "Public court records indicate that the foreperson at Defendant's trial previously served on three juries in state court. *This is consistent with the foreperson's statements during voir dire * * *.* The subpoena seeks information regarding that jury service * * * to obtain additional information regarding the foreperson's prior jury service." Def. Resp. at 1-2 (emphasis added). The "information" about prior service is what Defendant is seeking, but he does present any meaningful argument about *why* he needs the desired information. Indeed, Defendant concedes in his response brief that "we do not have specific information to make a sufficient showing under Rule 606(b) at this time." Def. Resp. at 1. Instead, Defendant

---

[3] The Tenth Circuit thus placed the burden on the party seeking production to make the four showings. In the grand jury setting, to whose subpoenas a presumption of reasonableness attaches, the burden is on the party seeking to quash the subpoena to establish that the subpoena is unreasonable or oppressive. *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991). Based on the reasoning in both cases, it likely makes sense to place the burden in the post-trial setting on the party seeking to have the documents produced, but the Court need not decide that issue because Petitioner in this case has established that Defendant does not seek relevant and admissible matter, and Defendant has made no showing that he is entitled to the documents he seeks.

offers only conjecture piled upon conjecture: "[T]here are *indications* that it is *possible* that some *unaccounted for* extraneous prejudicial information or outside influence impacted the jury's deliberation in this case." *Id.* (emphasis added). What those "indications" are—which apparently show only the possibility that there may be some helpful information to be obtained by the subpoena—remain unspecified by Defendant. At a minimum, Defendant fails to establish the first and fourth elements of the *Nixon/Iozia* framework, which is fatal because all four elements must be satisfied.

As to the first *Nixon/Iozia* element, relevance, Defendant offers no explanation about how the information he seeks might be relevant to properly considered post-trial matters. He states only in general terms that the documents may lead to evidence of extraneous prejudicial information or outside influence. Extraneous influences on juror deliberations include, for example, allegations that a bailiff or judge talked with the jurors during their deliberations, or that jurors received prejudicial news accounts during juror deliberations. See, *e.g.*, *Parker v. Gladden*, 385 U.S. 363, 363-64 (1966); *Mattox v. United States*, 146 U.S. 140, 150-51 (1892). However, prior life experiences—such as prior juror service—relate more obviously to a juror's internal decision making processes or potential biases. Prior experiences, even when discussed in the jury room, are not "'extrinsic' evidence that requires a new trial." *Peterson v. Wilson*, 141 F.3d 573, 577-78 (5th Cir. 1998); *Arreola v. Choudry*, 533 F.3d 601, 606 (7th Cir. 2008) (collecting cases from other circuits).[4]

And inquiry into juror biases is limited; in the post-trial setting, further inquiry may be merited where there are allegations that a juror lied or presented inaccurate information during

---

[4] Defendant has not even suggested that there was some sort of juror misconduct, and the Court is aware of no authority in support of the proposition that the mere fact that Defendant served on prior juries, even if those juries all tipped in one direction, would be enough to upset a conviction. *Cf. Dennis v. United States*, 339 U.S. 162, 167 (1950) (imputing bias to government employees serving as jurors "would be no more sensible than to impute bias to all storeowners and householders in cases of larceny or burglary").

4

*voir dire*, but even in that setting the remedy rarely is for a new trial. See, *e.g.*, *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984) (no new trial where juror failed to respond to question posed to entire venire about whether prospective jurors or their family members had ever sustained any severe injuries); *Smith v. Phillips*, 455 U.S. 209 (1982) (no new trial where juror had submitted a still-pending job application to the district attorney's office during jury service); *United States v. Bishop*, 264 F.3d 535, 555 (5th Cir. 2001) (even where a convicted felon lied about his record during *voir dire*, a new trial would not be warranted "unless the dishonesty appears to be rooted in bias or prejudice"); *United States v. Langford*, 990 F.2d 65 (2d Cir. 1993) (no new trial where juror concealed history of prostitution during *voir dire*).

Here, however, there is no allegation that the foreperson provided the Court and counsel with inaccurate information during *voir dire*. The Seventh Circuit "has held that while due process may require some sort of hearing to determine whether extraneous contacts may have affected a jury's ability to be fair, the standard applies only to prejudicial extraneous contacts, and *not* to preexisting juror bias. *In the due process context, the tool for examining an intrinsic influence like juror bias is* voir dire." *Arreola v. Choudry*, 533 F.3d 601, 606 (7th Cir. 2008) (emphasis added and internal citations omitted); see also *United States v. McClinton*, 135 F.3d 1178, 1186 (7th Cir. 1998) (stating that a district court judge should hold "some form of hearing" where outside contacts may have affected the jury, but that *voir dire* was the proper way to examine "an intrinsic influence like juror bias"). In *Arreola*, the court of appeals concluded that the trial judge had engaged in a sufficient post-verdict *voir dire* of a juror after it was learned that the juror gave an inaccurate answer during the pre-trial *voir dire*. Again, Defendant concedes that there is no allegation that the juror in this case gave an inaccurate or dishonest answer, so it is unclear how information about the foreperson's prior jury service could prove helpful to

5

Defendant. Another case, *Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132 (7th Cir. 1992), supports the conclusion that Defendant is not entitled to additional investigation of this matter. In *Artis*, counsel for the defendant learned after the trial that the jury foreman had formed a negative impression of the defendant's law firm many years before trial. The foreman revealed his impression to another juror during deliberations. The court of appeals affirmed the district judge's decision to enjoin further questioning of the jurors and to deny the company's motion for a new trial. 967 F.2d at 1141 (district court was not required to hold an evidentiary hearing for preexisting biases although "due process may require some sort of hearing to determine whether extraneous contacts may have affected a jury's ability to be fair"). Given that evidence of preexisting bias would not entitle Defendant to an evidentiary hearing or to a new trial, because he has already been afforded the opportunity to examine prospective jurors (Fed. R. Crim. P. 24), it is unclear how such information could help him prepare for any post-trial motions. See also *United States v. Graves*, 418 F.3d 739, 743 (7th Cir. 2005) (defendant was not denied right to an impartial jury even though one juror was the wife of a police officer and one had lived next door to drug dealers, where both jurors indicated that they could be unbiased).

The case law teaches that there is a relationship between a party's ability to show the relevance of a subpoena request and the burdensome nature of the request. The more that a party can show that the information sought is relevant, the more burdensome the request must be in order appropriately to quash a subpoena. See *United States v. R. Enters., Inc.*, 498 U.S. 292, 305 n.4 (1991) (Stevens, J., concurring) (collecting cases). In this case, Defendant has made no attempt to show that the information he seeks might entitle him to a new trial or even an evidentiary hearing, and cases like *Arreola* and *Artis* seem to foreclose the possibility that Defendant would be entitled to a new trial based on allegations of preexisting juror bias. In sum,

Defendant presents the Court with only his hope that the subpoena will lead to useful information. "[A] Rule 17(c) subpoena," however, "cannot properly be issued upon a 'mere hope.'" *United States v. Hang*, 75 F.3d 1275, 1283-84 (8th Cir. 1996); see also *United States v. Abdush-Shakur*, 465 F.3d 458, 468 (10th Cir. 2006) ("Conclusory statements do not establish relevance."). Thus, even though there is no argument by Petitioner that fulfilling Defendant's request would require considerable effort, Defendant still is not entitled to the information because he has made no showing that Petitioner has information of which Defendant may make use.

As to the fourth *Nixon/Iozia* element, Defendant himself indicates that his subpoena amounts to a fishing expedition. As he says in his response brief, "the purpose of the subpoena is to obtain additional information regarding the foreperson's prior jury service" and the foreperson's responses during *voir dire* jibe fully with the publically available records that show that the foreperson had served on three state court juries. Def. Resp. at 1-2. And, in keeping with the principle that Rule 17(c)(1) is not a discovery tool, the Seventh Circuit has held that the rule "allows only for the gathering of specifically identified documents which a defendant *knows* to contain relevant evidence to an admissible issue at trial." *United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002) (emphasis added). Defendant's subpoena, which seeks copies of any records showing dates of jury service by the foreperson, the case captions and file numbers of those cases, and the names and addresses of the other jurors in those cases (presumably so that Defendant's counsel or investigators can interview those jurors), can be characterized only as a search for evidence that may help him in some way. See also *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) (Rule 17(c) subpoena should not be used in a "blind fishing expedition seeking unknown evidence"); *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002)

(district court was under no obligation to conduct an *in camera* review of documents where the defendant was able to speak only of "the kinds of things" he expected to be in a government file and wanted "to see" if there was evidence that could prove useful). Defendant's response brief presents no argument from which a contrary conclusion may be drawn—and, in fact, candidly acknowledges how little Defendant "*knows*" in regard to the potential relevance (if any) of the foreperson's prior state-court jury service. See *Tokash*, 282 F.3d at 971.

As the Court noted in its earlier order, efforts to pull back the curtain on juror deliberations are disfavored [187, at 3]. Holding aside the significant concerns that animate that judicial reluctance, Defendant simply has failed to present any indication that his effort to learn more about the foreperson's juror service is anything more than post-trial discovery. While Defendant is free to investigate any leads he may develop, Rule 17 and the authorities cited above reveal that much more is needed to invoke the aid of the courts through the issuance of a subpoena. Accordingly, Petitioner's motion to quash must be granted.

**III. Conclusion**

For the reasons set forth above, Petitioner's motion to quash [201] is granted.

Dated: May 12, 2010

_____
Robert M. Dow, Jr.
United States District Judge