## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 09-cr-186-1 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CALVIN BOENDER. | ) | |

## MEMORANDUM OPINION AND ORDER

On, March 18, 2010, a jury found Defendant Calvin Boender guilty of five offenses under the laws of the United States [185]. Specifically, Defendant was convicted of corruptly giving things of value to then-City of Chicago Alderman Isaac Carothers in violation of 18 U.S.C. § 666(a)(2); making contributions in the name of another in violation of 2 U.S.C. §§ 441f, 437g(d)(1)(A)(ii); making contributions in excess of Federal Election Campaign Act limits in violation of 2 U.S.C. §§ 441a(a)(1), 437g(d)(1)(A)(ii); and two counts of corruptly endeavoring to obstruct the due administration of justice in violation of 18 U.S.C. § 1503(a). The Court sentenced Defendant to a 46-month term of imprisonment on June 25, 2010, and ordered Defendant to surrender to the Bureau of Prisons on August 31, 2010 [223].

Before the Court is Defendant's "Motion for Bail Pending Appeal and for Stay of Execution" [234] pursuant to 18 U.S.C. § 3143(b), which Defendant filed on August 10, 2010. For the reasons set forth below, after careful consideration of the issue, Defendant's motion [234] is respectfully denied.

**I.   Legal Standard**

Under 18 U.S.C. § 3143(b), a convicted person must be detained pending appeal unless the district court finds that (1) the defendant does not pose a risk of flight or danger to the community, and (2) the defendant's appeal is not taken for the purpose of delay and raises a

substantial question of law or fact likely to result in reversal, an order of a new trial, a sentence that does not include a term of imprisonment, or a reduced term less than the time already served plus the duration of the appeals process. For purposes of this motion, the Government does not dispute Defendant's contention that he poses no risk of flight or danger to the community, nor does the Government contend that Defendant is appealing in order to delay his incarceration. Thus, the proper disposition of Defendant's motion turns on whether Defendant's appeal raises a substantial question of law or fact likely to result in reversal or retrial.

The Seventh Circuit has adopted a two-step test to determine whether a defendant who, like Defendant here, is neither a flight risk nor danger to the community is entitled to bail pending appeal. A court considering bail pending appeal must first determine whether the question raised by the appeal is "substantial," and then must determine whether a contrary appellate ruling is likely to require reversal of the conviction or a new trial. *Bilanzich,* 771 F.2d at 298. According to the Seventh Circuit, a question presented on appeal is substantial within the meaning of § 3143(b) when it can be described as "a toss up or nearly so," "a close question," or "one that could be decided the other way." See *United States v. Hattermann,* 853 F.2d 555, 557 n. 6 (7th Cir.1988); *United States v. Shoffner,* 791 F.2d 586, 589 (7th Cir.1986); *United States v. Greenberg,* 772 F.2d 340, 341 (7th Cir.1985). Even if there is a substantial question, the court also must find that "the appellate court is more likely than not to reverse the conviction or order a new trial on all counts for which imprisonment has been imposed" should the question be decided in the defendant's favor. *Bilanzich,* 771 F.2d at 298. Accordingly, "harmless errors, errors that have no prejudicial effect, or errors that have been insufficiently preserved would not justify a court's granting bail." *Id* at 299. The defendant bears the burden of showing the merit of the appeal. *Id*. at 298.

**II.     Analysis**

Defendant contends that his appeal will raise two "substantial questions," either of which if decided in his favor will entitle him to a new trial or reversal of his conviction as to the obstruction and bribery counts: (1) whether it was error to permit his attorneys Daniel Reidy and Michael O'Connor to testify at trial as to communications with him, and (2) whether 18 U.S.C. § 666(a)(2) contains a *quid pro quo* requirement.

In response, the Government initially points out that the outcome on appeal of these questions will have no effect on Defendant's conviction on the two campaign finance violation counts (Counts 6 and 7), for which he was sentenced to 12-months' imprisonment. Therefore, the Government argues, Defendant cannot show that a successful appeal would result in a reversal or new trial on all counts for which he was sentenced to prison. *Bilanzich,* 771 F.2d at 298. Defendant responds that a conviction on Counts 6 and 7 alone would permit a probationary sentence or a sentence of shorter duration than the expected duration of the appeal process. The Court will not hypothesize about what sentence it would have imposed had Defendant been convicted *only* of the campaign finance violations. Accordingly, the Court does not base its denial of Defendant's motion on the ground that his campaign finance convictions would leave him imprisoned regardless of the outcome of the appeal. Instead, as explained below, the motion is denied because none of the questions that Defendant has identified raises a "substantial question" of law or fact likely to result in reversal or retrial of the bribery and obstruction of justice counts under the pertinent Seventh Circuit authorities.

**A.     Attorney-Client Privilege Issues**

Defendant argues that this Court abused its discretion by (1) finding the Government made a preliminary showing that Defendant's communications with Reidy were made in

furtherance of a crime or fraud; (2) allowing O'Connor to testify without requiring the Government to make a *prima facie* showing of crime-fraud; and (3) permitting the Government to attend the *in camera* hearing and examine Reidy and O'Connor. The Court dealt with each of these issues at length in its June 21, 2010 opinion [215, Mem. Op. at 3-16] denying Defendant's post-trial motions. Without rehashing the entire analysis, the Court does not believe that any of its discretionary rulings relating to the crime-fraud issues that arose prior to trial can be described as "a toss up or nearly so." *Greenberg*, 772 F.2d at 341.

Prior to trial, the Court concluded that the Government presented ample evidence to warrant a hearing on whether the Defendant's communications with his former lawyers fell within the crime-fraud exception to the attorney-client privilege. A party seeking to abrogate the privilege need only present *prima facie* evidence that "gives colour to the charge" by showing "some foundation in fact." *United States v. BDO Seidman*, 492 F.3d 806, 818 (7th Cir. 2007). In its June 21, 2010 Order (at 5-6) this Court reaffirmed that the proffer set forth in the Government's motion *in limine* [86] provided far more evidence that was required to meet the standard. See *United States v. Davis*, 1 F.3d 606 (7th Cir. 1993). For this reason, the sufficiency of the preliminary showing was neither "a toss up or nearly so" (*Greenberg*, 772 F.2d at 341) nor "a close question" (*Shoffner,* 791 F.2d at 589).

Similarly, the Court previously has explained why it was not error (or an abuse of discretion) to allow O'Connor to testify. To begin with, in regard to O'Connor's testimony at the *in camera* hearing, it is worth reemphasizing that O'Connor was *Defendant's* witness—the cross-examination of O'Connor by the Government was a natural consequence of Defendant's choice to call O'Connor as a witness at the hearing. Furthermore, O'Connor never revealed any privileged information. O'Connor's testimony at the hearing showed that Defendant used him

merely as a "conduit" to transmit documents from the Defendant to Reidy; Defendant did not seek legal advice from O'Connor with respect to the Government's subpoena or GJ 0000008, nor did O'Connor provide any. But more importantly, Defendant cannot explain why the fulsome evidence that the Government presented with respect to Reidy establishing grounds to assert the crime-fraud exception did not also apply to O'Connor, for it is undisputed that the documents that eventually were funneled into Reidy's hands – including the "invoice" – first were provided by Defendant to O'Connor. [See 215, Mem. Op. at 11-12.] To the extent that Defendant now complains about O'Connor's testimony at trial (rather than at the *in camera* hearing), by the time that O'Connor took the stand, additional "O'Connor-specific" evidence already had been introduced sufficient to give "colour to the charge" that Defendant may have used O'Connor as part of an effort to commit a crime. See *Id.* at 12.

In addition, as the Government observed in its response to Defendant's post-trial motion [see 209, at 7-8], any error relating to O'Connor's testimony would be harmless in any event. "[H]armless errors [or] errors that have no prejudicial effect * * * would not justify a court's granting bail" since these errors would not cause a court of appeals to "reverse the conviction or order a new trial." *Bilanzich,* 771 F.2d at 299. Even without O'Connor's testimony – either before or during the trial – the testimony of the other witnesses (Lucia Smith, Robert Finnigan, the typewriter analyst, and Reidy) along with the documentary evidence amounted to an overwhelming case on the obstruction of justice count relating to the invoice. For all of these reasons, the Court concludes that the propriety of O'Connor's testimony does not provide a substantial question on appeal.

Last, the question of whether it was an abuse of discretion to allow the Government to participate in the *in camera* hearing and examine Reidy and O'Connor does not present a

5

substantial question for appeal. This Court was well within its discretion in concluding that an adversarial hearing would be the most effective and efficient manner in which to present the "crime fraud" issues for resolution in view of the facts of the case and the rapidly approaching trial date. Other than his continued inapt references to *United States v. Zolin*, 491 U.S. 554 (1989), Defendant has identified no case standing for the proposition that the *in camera* hearing to determine the application of a privilege must also be *ex parte* in order to preserve a defendant's rights.

Here too, even if this Court were incorrect in allowing the Government to participate in the hearing, such an error would be harmless. At the time of the *in camera* hearing, the Court did not perceive—nor did Defendant explain—a substantial risk that Defendant would be prejudiced if privileged communications were revealed during the course of the *in camera* hearing. Defendant now argues that the Government's attendance at the hearing was prejudicial to him because the Government learned "defense trial strategy" and was exposed to "confidential communications." The Court sustained objections to questions posed during the hearing that the Court determined may have elicited privileged answers—Defendant suffered no harm there. And Defendant's vague complaint that he was prejudiced by the Government's exposure to Defendant's "trial strategy" is impossible to evaluate when Defendant failed to identify – either then or now – any particular strategy that was revealed.

Additionally, the Court agrees with the Government that even if one or more of the issues discussed above presented a substantial question, the likelihood of a reversal is substantially reduced because each of the privilege-related rulings is subject to review under the deferential "abuse of discretion" standard. See, *e.g. United States v. Davis*, 1 F.3d 606, 609 (7th Cir.1993) (district court decisions regarding whether a party has made a *prima facie* showing to challenge

an assertion of attorney-client privilege "may be disturbed only for an abuse of discretion"); *Natta v. Zletz*, 418 F.2d 633, 636 (7th Cir. 1969) (district court's decision regarding procedures used to make privilege determination (evidentiary hearing versus *in camera* inspection) reviewed for abuse of discretion). Defendant acknowledges that the deferential standard applies. Reply at 2-3. The discretionary nature of this Court's privilege-related rulings lowers the chance the Seventh Circuit might see it "the other way." *Bilanzich*, 771 F.2d at 298.

      **B.**      **Quid Pro Quo and Federal Program Bribery**

In his reply [245] Defendant concedes that "Seventh Circuit case law is unfavorable to our position that 18 U.S.C. § 666(a)(2) contains a *quid pro quo* requirement." Mem. at 3 (citing *United States v. Medley*, 913 F.2d 1248 (7th Cir. 1990), and *United States v. Agostino*, 132 F.3d 1183 (7th Cir. 1997)). Where, as here, there appears to be controlling precedent contrary to Defendant's position on an issue preserved for appeal, the issue ordinarily does not present a substantial question permitting bail pending appeal. See *United States v. Miller,* 753 F.2d 19, 23 (3d Cir. 1985). Moreover, in view of *United States v. Anderson*, 517 F.3d 953, 961 (7th Cir. 2008), and *Sabri v. United States*, 541 U.S. 600, 605-06 (2004), it seems unlikely that the Seventh Circuit would adopt Defendant's reading of the pertinent statutes based on *United States v. Sun-Diamond Growers of Calif.*, 526 U.S. 398 (1999). Finally, the Court rejects any suggestion that the jury instructions were improper or that there is a substantial question concerning the sufficiency of the evidence on the bribery count. [See 215, at 16-17.]

### III.	Conclusion

For the reasons set forth above, Defendant's Motion [234] is respectfully denied.

Dated:  August 30, 2010

_____
Robert M. Dow, Jr.
United States District Judge